**Opinion filed August 23, 2012**



# In The

# Eleventh Court of Appeals

_____

## Nos. 11-10-00258-CR & 11-10-00259-CR

_____

## DAVID ZAMORA HERNANDEZ, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. CR20367 & CR20368**

### M E M O R A N D U M   O P I N I O N

The jury convicted David Zamora Hernandez, appellant, of the offenses of tampering with or fabricating physical evidence (Cause No. 11-10-00258-CR) and possession of one to four grams of methamphetamine with intent to deliver (Cause No. 11-10-00259-CR). Upon appellant's plea of true to the enhancement allegations, the trial court assessed punishment at confinement for sixty years for each offense, with the sentences to run concurrently. We affirm.

In the tampering case, appellant presents seven issues for review. In the first two issues, he challenges the legal sufficiency of the evidence. In the third issue, he contends that the trial

court erred in refusing to instruct the jury pursuant to Article 38.23 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). In his final four issues, appellant complains that the trial court abused its discretion in admitting evidence of extraneous offenses because he did not receive proper notice from the State and because the evidence was otherwise inadmissible. Appellant presents four issues in the appeal of his conviction for possession with intent to deliver; these four issues are identical to the third, fourth, fifth, and sixth issues in the tampering case.

Appellant challenges the sufficiency of the evidence in his first and second issues in the tampering case, asserting that the evidence is insufficient to show that he knew a traffic-stop investigation was in progress or that he destroyed methamphetamine. Appellant was charged by indictment with the offense of tampering with or fabricating physical evidence as follows: while "knowing that an investigation was in progress, to-wit: traffic stop, [appellant] intentionally or knowingly destroy[ed] physical evidence, to-wit: methamphetamine, with intent to impair its availability as evidence in the investigation." *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2012).

We review challenges to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The record shows that appellant was a passenger in a vehicle that was stopped by Deputy John Fincher. Deputy Fincher had received information from Lieutenant Tony Aaron to be on the lookout for that vehicle based upon a tip from a confidential informant. Deputy Fincher initiated a traffic stop after observing the vehicle traveling 57 miles per hour in a 55-mile-per-hour zone. The driver pulled the vehicle over, and Deputy Fincher approached it. As he did so, he observed "a lot of furtive movements in the vehicle" by the driver and the passenger. Deputy Fincher instructed the driver, Susan Murr, to exit the vehicle. She appeared to be very

nervous.  Deputy Fincher noticed appellant continuing to make furtive movements inside the vehicle.

Deputy Fincher approached the vehicle again, informed appellant that he had obtained consent for a search, asked appellant to exit the vehicle, and escorted appellant to his patrol car. Deputy Fincher noticed that the passenger's side window was open and also observed "what appeared to be illegal narcotics that had been dumped onto the floorboard and on the seat" on the passenger's side.  The substance was ground into the carpet and the seat.  Deputy Fincher noticed the same substance on the window sill, indicating to him that the substance was disposed of during the traffic stop, not while the vehicle was moving.  There were a lot of crushed up or ground up particles that Deputy Fincher said he was unable to collect because they had been "destroyed."

A sample of the substance from the vehicle field-tested positive for methamphetamine. However, the results of lab tests performed on the samples that were collected from the vehicle were not positive for methamphetamine.  A chemist from the Texas Department of Public Safety's crime lab in Abilene testified that the samples that he tested from the vehicle were dimethyl sulfone, also known as MSM, a cutting agent that "looks just like crystal meth."  He also testified that dimethyl sulfone would not show a positive result for methamphetamine when tested using a field test kit.  Dimethyl sulfone is not a controlled substance, but it is often mixed with methamphetamine by distributors to increase the amount of product they can sell.

After arresting appellant and transporting him to jail, Deputy Fincher observed broken pieces of glass in the floorboard of his patrol car.  He stated that the pieces of glass were consistent with a methamphetamine pipe that had been "crushed" and "destroyed."  Deputy Fincher observed that some of the pieces were discolored by "burned residue."  Because of the crushed condition of the pipe, Deputy Fincher was unable to package it as evidence or scrape any residue off for lab testing.  Instead, he took photographs of his floorboard, and the photos were admitted into evidence.  Murr testified that she and appellant had used a pipe to smoke methamphetamine earlier that day and that the pipe was "dirty," which meant that it still had methamphetamine in it.  According to Murr, the pipe was in the car with them, but she did not know what appellant did with the pipe.

Deputy Fincher also found a baggie stuck between the seats of his patrol car where appellant had been sitting.  Lab testing indicated that this baggie contained 1.08 grams of

methamphetamine. Deputy Fincher testified that he routinely searches his patrol car before his shift and after transporting people and that these items were not in his patrol car prior to transporting appellant.

At the time of appellant's trial, Murr had already been convicted and was serving her sentence in the Texas Department of Criminal Justice for possession with intent to deliver based upon the same incident for which appellant was on trial. Murr testified that she and appellant not only used methamphetamine, but also sold methamphetamine. Prior to being pulled over by Deputy Fincher, she and appellant had traveled to Brownwood in appellant's sister's vehicle to purchase methamphetamine from appellant's niece. They purchased seven grams of what was supposed to be methamphetamine from appellant's niece shortly before being pulled over. According to Murr, appellant's niece "jacked" them because what they received from her was "supposed to be dope, but it wasn't. It looked real bad. We tried it and it wasn't no good." When they "tried" the substance from appellant's niece, they snorted it and did not use their pipe. Murr referred to the stuff they received from appellant's niece as "cut" (a cutting agent) with no methamphetamine in it. After trying unsuccessfully to contact appellant's niece, Murr and appellant left Brownwood and headed back home to Menard. Murr testified that she saw an officer parked beside the road. According to Murr, both she and appellant were aware that they were being followed by a "cop." Appellant began "[g]etting rid of the stuff or getting it together." At some point, the officer turned on his lights, and Murr pulled over.

We hold that a rational jury could have found beyond a reasonable doubt that appellant knew an investigation was in progress. The evidence indicated that appellant was aware that he and Murr were being followed by a police officer, that the officer pulled them over, and that a traffic stop was underway when appellant began gathering and destroying potential evidence. Contrary to the contention made by appellant in his brief, he need not have been aware that a drug investigation was in progress at that time. *See Williams v. State*, 270 S.W.3d 140, 144–45 (Tex. Crim. App. 2008). The court in *Williams* stated that "the title of the investigation and the evidence destroyed need not match in an indictment alleging an offense under section 37.09(a)(1), as long as the offender destroyed a thing with the intent to impair its availability as evidence in an investigation that he knows is in progress." *Id.* at 145. Appellant's first issue in Cause No. 11-10-00258-CR is overruled.

We also hold that a rational jury could have found beyond a reasonable doubt that appellant destroyed methamphetamine. The testimony of Deputy Fincher indicated that appellant crushed and destroyed a glass pipe in the floorboard of the patrol vehicle; that the pipe contained residue; and that no other pipes were found during the officer's search of appellant, Murr, or their vehicle. Murr's testimony indicated that, when they were stopped, she and appellant possessed a pipe that contained methamphetamine. Murr did not know what appellant did with the pipe. The jury could have rationally inferred that the pipe crushed by appellant in the floorboard of the patrol vehicle was the pipe that Murr acknowledged as being with them and containing methamphetamine. Thus, the evidence is sufficient to support the jury's verdict. Appellant's second issue in Cause No. 11-10-00258-CR is overruled.

In his next issue, appellant contends that the trial court erred in refusing to instruct the jury pursuant to Article 38.23 not to consider any evidence that the jury believed was illegally obtained. In this issue, appellant asserts that there was a fact issue regarding Murr's consent to the search of the vehicle, and he also argues that Deputy Fincher lacked probable cause to search. When there is a disputed fact issue that is material to the defendant's claim of a constitutional or statutory violation that would render evidence inadmissible, an exclusionary-rule instruction is required by Article 38.23. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Appellant asserts that he was entitled to such an instruction because there was a disputed fact issue as to whether Murr's consent for the search of the vehicle was made voluntarily. The State contends, as it did at trial, that the instruction was not necessary because, as a matter of law, probable cause existed for the search, making the voluntariness of Murr's consent immaterial to the lawfulness of the search. We agree with the State that, if probable cause existed for the search, the trial court was not required to give an instruction under Article 38.23 based upon the disputed fact issue concerning Murr's consent for the search. *See id.* at 510 ("[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence."). The disputed fact must be essential in deciding the lawfulness of the challenged conduct. *Id.* at 511.

The trial court ruled that, under the totality of the evidence presented at trial and at the hearing on the motion to suppress, probable cause existed to search the vehicle with or without consent. A warrantless search of a vehicle is reasonable when peace officers, collectively, have

probable cause to believe that the vehicle contains contraband. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Woodward v. State*, 668 S.W.2d 337, 344–46 (Tex. Crim. App. 1984). Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). Stated another way, probable cause exists if the known facts and circumstances are sufficient to warrant a reasonable belief that contraband or evidence of a crime will be found. *Wiede*, 214 S.W.3d at 24. Included in "the known facts and circumstances" are those personally known to law enforcement officers as well as those derived from a reasonably trustworthy source. *Id.* The subjective intent and motivations of the officers are not taken into account when considering the totality of the circumstances, but the officers' training, knowledge, and experience are taken into consideration. *Id.* at 25.

Giving due deference to the trial court's implicit findings of historical fact and basing our de novo review on the totality of the circumstances revealed in the record, we hold that probable cause to search existed. *See Dixon*, 206 S.W.3d at 616. Lieutenant Aaron testified at trial that he received information from a confidential informant regarding appellant. According to Lieutenant Aaron's in camera testimony, the confidential informant was a credible source who had provided reliable information in the past. Lieutenant Aaron's and Deputy Fincher's testimony reveal that the confidential informant gave detailed information, including appellant's name, the type of vehicle in which he would be traveling, and also the direction and route he would be traveling. The confidential informant told Lieutenant Aaron that there would be methamphetamine in the vehicle. Because Lieutenant Aaron was busy at the time, he called Deputy Fincher, gave him a description of the vehicle in which appellant would be traveling: a maroon Isuzu Rodeo, and told him on what highway and in which direction the vehicle would be traveling. After stopping the vehicle for a traffic violation and removing the occupants, Deputy Fincher looked inside the vehicle before beginning his search and observed a crystal substance that appeared to him, based on his training and experience, to be methamphetamine. "It was on the seat, in the passenger seat, [on] the center console, . . . on the floorboard . . . ground into the carpet." The crystal substance was also "on the window sill." Based upon the information that Lieutenant Aaron received from a reliable confidential informant, the furtive movements by the occupants of the vehicle, the inconsistent stories that were being told to Deputy Fincher by appellant and Murr,

6

and the crystal substance in plain view in the vehicle, we hold that a totality of the collective information known to the officers constituted probable cause for a warrantless search of the vehicle. Thus, the disputed fact issue concerning Murr's consent was not material to the lawfulness of the search, and the trial court did not err in failing to give an Article 38.23 instruction. Appellant's third issue in Cause No. 11-10-00258-CR and his first issue in Cause No. 11-10-00259-CR are overruled.

In his remaining issues, appellant complains of the admission of evidence of "extraneous transactions" over his objection that he was not given proper notice by the State of its intent to introduce them. Appellant argues that the State failed to inform him of the extraneous transactions even though he had requested notice pursuant to TEX. R. EVID. 404(b), that the State's Rule 404(b) notification was insufficient, that the extraneous transactions were not "transactional contextual evidence," and that the State failed to file the notification in both causes. Upon the State's proffer of evidence relating to (1) appellant's and Murr's activities on the date of these offenses (such as smoking methamphetamine with the pipe that was allegedly destroyed by appellant and coming to Brownwood to purchase methamphetamine) and (2) the details underlying appellant's McCulloch County conviction for possession of methamphetamine (which was offered to show appellant's knowledge and intent), appellant objected that he had not received proper notice under Rule 404(b).

The record shows that appellant filed a Rule 404(b) request for notice. The State timely filed a Notice of Intent to Offer Evidence of Prior Convictions and Extraneous Offenses, but this notice was filed in Cause No. 11-10-00259-CR only. We find no merit to appellant's assertion that notice was insufficient because it was filed in only one of the underlying cause numbers. These cases were joined by an order of the trial court granting the State's motion for joinder of the indictments.

In its notice of intent, the State notified appellant that it intended to introduce evidence of his "entire criminal history, extraneous offenses, or prior bad acts, served via pretrial discovery, and/or otherwise available pursuant to open file policy." The notice also listed several convictions in the following format: "On or about December 14, 2009, the defendant was convicted of the offense of Possession of Controlled Substance in McCulloch County, Texas." In addition to the notice of intent, the State provided appellant's counsel—in both causes—with "copies of pertinent information from [the State's] file," including various discovery documents

7

related to appellant's extraneous offenses, the receipt of which was evidenced by the signature of appellant's original defense counsel and also by the State's assertions in open court. The State also provided appellant with a copy of Murr's statement, which contained details of the trip to Brownwood and its purpose. Furthermore, appellant's original defense counsel sent a letter to appellant acknowledging notice of the McCulloch County conviction and the State's probable use of that offense in these cases. Counsel stated in the letter: "We have talked about the fact that you are serving a State Jail sentence now out of McCullough [sic] County . . . . Please understand that the DA will more than likely try to introduce the McCullough [sic] County conviction to show that you have knowledge of the drug trade, etc." We note that appellant's original defense counsel delivered his file and all discovery obtained from the State, including the McCulloch County judgment, to the attorney who represented appellant at trial.

A trial court commits error if it admits Rule 404(b) evidence when the State has not complied with the notice provisions of that rule. *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). The purpose of the notice requirement in Rule 404(b) is to prevent surprise. *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). To comply with the Rule 404(b) notice provision, the State must give "reasonable notice" in advance of trial of its intent to introduce in its case-in-chief evidence of other crimes, wrongs, or acts other than those arising in the same transaction. Rule 404(b). We agree with appellant's assertion that the details underlying the McCulloch County conviction were not acts arising out of the same transaction as the current offenses. However, relying on *Hayden*, we hold that the trial court did not abuse its discretion in determining that the State provided appellant with reasonable notice in compliance with Rule 404(b). *See id.* at 272–73. We also hold that the trial court did not abuse its discretion to the extent that it determined that the State was not required to give notice of Murr's testimony that she and appellant had a pipe that they used to smoke methamphetamine because their use and possession of this pipe, which was allegedly destroyed in Deputy Fincher's patrol car, arose out of the same transaction and was part of the charged offense. Rule 404(b) does not require the State to give notice of its intent to introduce acts that arise out of the same transaction as that for which a defendant is on trial if the acts are "so intermixed or connected as to form a single, indivisible criminal transaction." *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005). Appellant's crushing of a pipe containing methamphetamine was part of the charged

conduct. Appellant's fourth, fifth, sixth, and seventh issues in Cause No. 11-10-00258-CR and his second, third, and fourth issues in Cause No. 11-10-00259-CR are overruled.

The judgments of the trial court are affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


August 23, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.